erty interests left purely one of construction and dependent upon the contract, the terms of which had brought them together. I am not unmindful of the tendency of the older cases to sustain the suggestion that it would be against public policy to have titles to property transferred as soon as charters are revoked, etc., but in the development of law controlling and governing the interests of constantly increasing organizations, such as we have here, the tendency has been to sustain these contracts and uphold the provisions of the constitution and laws of these organizations. A fair interpretation of the constitution and laws of this organization sustains the claim of the plaintiff that, in case of dissolution of a subordinate aerie by the revocation of its charter or by voluntary surrender of the charter, the property accumulated by the subordinate aerie becomes the property of the Grand Aerie.

I repeat, as suggested above, that both of these conditions appear in this record. The charter was revoked, and the local members voluntarily surrendered the charter. I am therefore of the opinion that the Grand Secretary, having received from the secretary of Lake Park Aerie notice that the local aerie had been disbanded, and thereafter, because of this fact, the Worthy Grand President having revoked the charter, the right to the possession and ownership of the property in question vested in the Grand Aerie. I therefore conclude that the plaintiff is entitled to recover of the defendants the amount admitted by the pleadings and shown by the proofs as the value of the property, $8,630.30, together with interest at 7 per cent. per annum.

[2] It is clear that those who assumed to keep this property, belonging to the plaintiff, deliberately dropped the membership from the rolls until it was reduced to a comparatively few persons, with the purpose of taking this property. They must have acted together with this common purpose in view. It was the joint and several action of these parties that constituted the wrong complained of by the plaintiff, and the defendants are jointly and severally liable for the misappropriation of this property, and therefore must jointly and severally respond to the plaintiff for their illegal action. What I have said, of course, does not apply to the defendant Fred Kurth, who was not a member of the local organization at the time of its dissolution.

You may prepare proper judgment, giving defendants an exception.

---

### In re D. F. & C. P. LONG.

(District Court, S. D. Florida. January 7, 1918.

**Bankruptcy ⬗396(3)—Life insurance policy held not exempt.**

Under Gen. St. Fla. 1906, § 3154, providing that, whenever any person shall die leaving insurance on his life, insurance shall inure exclusively to the benefit of beneficiaries, and that the proceeds shall not· be liable to attachment or any legal process in favor of any creditor of the insured, an insurance policy was not exempt in bankruptcy proceedings against the insured; the statute having reference merely to the disposition of the proceeds after the insured's death.

⬗For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Bankruptcy. In the matter of D. F. & C. P. Long, bankrupts. On petition of D. F. Long to review portion of referee's order denying his right to exempt life insurance policy, and creditors' petitions to review that portion of the order setting apart to said bankrupt certain land as homestead. Petitions denied.

See, also, 275 Fed. 119.

C. M. Cooper and C. P. & J. J. G. Cooper, all of Jacksonville, Fla., for bankrupt.

Marks, Marks & Holt, of Jacksonville, Fla., for creditors.

CALL, District Judge. On September 19, 1917, the referee made an order disapproving the action of the trustee in setting apart to the bankrupt D. F. Long life insurance policy No. 310895, in the Penn Mutual Life Insurance Company, as exempt; said order requiring the bankrupt to pay the cash surrender value of $400. In the same order the referee confirmed the action of the trustee in setting apart to said bankrupt as a homestead 50 acres of land near Mandarin.

The bankrupt filed his petition to review that portion of the referee's order denying his right to exempt the life insurance policy, and certain creditors filed petitions to review that portion of the order setting apart to the bankrupt the homestead near Mandarin, Fla. Both questions were argued and submitted at once.

The bankrupt claims the insurance policy as exempt under section 3154 of the General Statutes of Florida. This section is compiled as chapter 2 of the General Statutes, and is headed "Life Insurance Policies." Section 3154, "Disposition of Proceeds," reads in part as follows:

"Whenever any person shall die in this state leaving insurance on his life, the said insurance shall inure exclusively to the benefit," etc.

The referee reached the conclusion that this section controlled the disposition of the proceeds of life insurance after the death of the insured, and I think that conclusion correct. It is not, it seems to me, an exemption recognized by the Bankruptcy Act (Comp. St. §§ 9585–9656), and to be enforced by the bankruptcy court. The petition to review that portion of the referee's order will therefore be denied.

The creditors challenge that portion of the referee's order confirming the action of the trustee as to the Mandarin homestead. The referee filed his opinion setting forth the facts as to the homestead as they appear from the testimony, and after considering the testimony I think it is a fair statement of the conclusions to be deduced from the record. Under the facts as found by the referee, I am of opinion that the bankrupt Long is entitled to the homestead set apart to him near Mandarin.

The petition to review this portion of the referee's order will therefore be denied. It will be so ordered.